The opinion of the court was delivered by
Blanchard, J.
The city of New Orleans, through its Commissioner of Public Works, acting by authority of an ordinance of the Common Council, chartered from the plaintiff company the barge “Laura Lee”.
The city’s object was to make use of the vessel for the loading- and transportation of garbage from points in the city to points below the city, where the garbage would be shoveled into the river.
The barge was delivered to the city officials, towed to the garbage wharf, where, during three days, she was being loaded with garbage.
She was then, under convoy of a tug-boat, towed to a point three miles below the city, where she was tied up for the night. During the night she disappeared and no trace of her was ever afterwards found.
The rope with which she was moored to the bank — a five-inch circumference, or inch and a half diameter rope — was found the next morning-parted, with all the appearance of having been broken by violence or strong- pressure.
A watchman, who had been left with the boat, disappeared with it and has not been heard of since.
There is no possible way of accounting for the disappearance of the barge except upon the hypothesis that she sank and that the colored watchman, sinking with her, was drowned. It was the weight -and pressure of the sinking vessel that parted the cable.
The barge, from the time of her delivery to the city, under the charter, was entirely under the control of the agents and employees of the city. No employee of the owners was left aboard of her, or in any way controlled her.
The return of the vessel not having been made to the owners, this suit was brought to recover her value, which is averred to be $1500.
It is represented that the city, through its officials, was under duty to the owners to use due care, caution and skill in loading and handling *1861 the barge, but that this obligation was disregarded and the vessel was loaded and handled in a manner so careless, negligent and unskillful that, as the result thereof, she sank and became a total loss to petitioners.
It is averred that the vessel was strained and twisted by the pressure resulting' from the unequal distribution of the loads of garbage dumped upon her from carts, that this caused her butts to spring, her seams to open and leaks were started which caused her destruction by sinking.
The defense is denial of fault or negligence on part of the city’s agents, and the averment that the loss of the barge was due to her unseaworthy condition.
There was judgment below in favor of the plaintiff, and the sum of $5000 was awarded as the value of the barge.
Defendants appeal, and plaintiff files an answer to the appeal asking an increase of the judgment to $7,500.00.
Only questions of fact are raised by the pleadings and evidence.
1. Was the barge in good order and condition when delivered to defendants ?
2. Was her destruction by sinking the result of carelessness and of the lack of skill on part of the agents and employees of defendants?
Both must be answered in the affirmative.
Seldom has a stronger case been made out.
The evidence is conclusive that the barge was in thorough good order and condition when the city received her; that she had but recently been overhauled and repaired in the most careful manner; that she did not leak, was entirely seaworthy and a well equipped and serviceable vessel.
Some two or three weeks before the city hired her she had transported safely an enormous load of oak staves, in weight far in excess of that of the garbage loaded upon her by the city.
All that was required to insure the barge’s efficiency and safety was that she be loaded in such way as to keep her on an even keel. This done she would carry any load within her capacity, which was very great, for she was 225 feet long, 42 or 43 feet wide, with about 7 feet depth of hull.
But in loading her with garbage the city employees were utterly lacking either in the necessary knowledge and skill to do it in a proper way, or else were guilty of gross carelessness in the premises.
*1862 The evidence establishes with reasonable certainty that to this faulty loading of the vessel is her destruction attributable.
After being loaded she was ’towed down the river between five and six o’clock in the afternoon. Some four or five witnesses, called to testify, saw her pass down.
The testimony of Mr. Tracey Lilly, which is corroborated by the others, gives the situation.
He was foreman of the Good Intent Dry Dock, knew the barge well, and took notice of her as she passed the dock yard on her way down.
He says: “She was in pretty bad condition; pretty badly loaded. Both ends were down in the water and the middle up about five or six feet, buckled up and twisted and both corners dropped over. One of the men called my attention to it and said she was pretty badly loaded and would certainly sink on the way down.”
Asked if he knew whether it was customary to distribute a load on barges, he said: “If you don’t you will break up the boat; the butts are fixed for that purpose.” He said further the boat could not have been all right when loaded in that condition, and that he never saw a boat as twisted as she was. “A barge in that condition might live a week and might not live two hours.”
There is testimony showing that while the barge was being loaded with garbage it was called to the attention of those loading her that she was being improperly loaded, and would sink unless she were straightened by a proper distribution of the weight of the cargo.
Witnesses called/ by the defense attémpted to show a different state of facts, but the weight and preponderance of evidence sustains the contention of the plaintiff.
The barge was not overloaded. The trouble was in want of proper distribution of the load. This caused her destruction and it is in evidence that the “Laura Lee” was not the only barge engaged in transporting garbage sunk that season ini consequence of improper loading by the city’s employees.
With regard to the value of the boat we are not satisfied that the amount allowed by the district judge should be increased.
But the judgment below condemns the city of New Orleans “and W. L. McGary, Oommissioner of Public Works, in solido.”
The contract for the hire of the barge was made by the city through *1863 its agent, McGary, and the petition charges in effect that what McGary did was done in his capacity as agent.
Under the circumstances it is not thought that McGary, Commissioner of Public Works, should have been condemned in solido with the city. A judgment against the city is all the plaintiff is entitled to.
After all, “McGary, Commissioner of Public Works”, is the city. That is to say, a judgment against him in that capacity is but a judgment against the city.
He is not condemned in his personal or individual capacity.
It is, therefore, ordered and decreed that the judgment appealed from, in so far as it condemns the city of New Orleans to pay the plaintiff company five thousand dollars, with legal interest from judicial demand, he affirmed. But that in so far as it condemns W. L. McGary, Commissioner of Public Works, in solido with the city for said amount, the said judgment is reversed and annulled — costs of both courts to be borne by defendant, the city of New Orleans.